# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

ANDRES DIAZ LOPEZ,

   *Petitioner*,

v.           Case No.: 3:25-cv-1313-JEP-SJH

DIRECTOR OF
ENFORCEMENT AND
REMOVAL OPERATIONS,
MIAMI FIELD OFFICE, U.S.
CITIZENSHIP AND
IMMIGRATION SERVICES,
et al.,

   *Respondents*.

_____/

## <u>ORDER</u>

  Through counsel, Petitioner Andres Diaz Lopez, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a writ of habeas corpus under 28 U.S.C. § 2241, seeking, among other relief, release from custody or a bond hearing in accordance with 8 U.S.C. § 1226(a). (Doc. 1). Respondents (collectively, "the Government") filed a Response, arguing the Court lacks jurisdiction to entertain the petition and that in any event the petition lacks merit because Petitioner's detention is lawful under 8 U.S.C. § 1225(b)(2). (Doc. 7). Petitioner filed a Reply (Doc. 8).

  Petitioner calls on this Court to decide an emergent and complex question of statutory interpretation on which district judges have disagreed: whether an alien without lawful admission who's nonetheless been living in the United States for some appreciable period of time (here, a few years) is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or instead is subject to discretionary detention and may receive a bond hearing under 8 U.S.C. § 1226(a). The Supreme Court and

Eleventh Circuit haven't had occasion to answer that question yet. Therefore, this Court must provide its own best answer. To do that, it will examine the text of both statutes, keeping in mind how those statutes fit within the broader context of the Immigration and Nationality Act ("INA") as a whole. Ultimately, this Court concludes that the petition must be denied.

Before jumping into the analysis, two points merit mention. First, this Court must faithfully interpret and apply the relevant statutes; it is not this Court's role to evaluate or second-guess Congress's policy choices, as reflected in the statutory text. *Compare* U.S. Const. art. I, § 8, cl. 4 (vesting Congress with the power [t]o establish an uniform Rule of Naturalization"), *with* U.S. Const. art. III, § 2 (vesting the federal courts with only the power to decide "[c]ases" and "[c]ontroversies"). And second, this Court is well aware that, at present, its conclusion represents a minority view. It does not reach its conclusion lightly or without due regard for the work of its colleagues—in this District and outside of it—who have labored to answer a thorny question on a compressed timeframe. Nonetheless, absent further guidance from its reviewing courts, this Court remains duty-bound to follow its best understanding of the law, even when that means taking the less-traveled path.

# I.

Codified at Title 8 of the United States Code, the INA sets forth the federal immigration law that governs this case. It defines "alien" as "any person not a citizen or national of the United States," 8 U.S.C. § 1101(a)(3), and it contains provisions governing the detention and removal of such persons. "Under the INA, detention and removal procedures depend on the type of" alien involved. *Chen v. Almodovar*, No. 25 Civ. 9670 (JPC), 2026 WL 100761, at *1 (S.D.N.Y. Jan. 14, 2026). In that regard, the INA categorizes aliens "based on several factors, including where they encountered immigration officials, whether they have engaged in certain disfavored conduct, and whether a determination has been made as to the likelihood of their entitlement to admission." *Id.* As we will see, these factors determine whether an alien receives expedited or full removal proceedings, whether an alien's detention is mandatory or discretionary, and whether a detained alien may receive bond hearings or parole.

Two sections of the INA—sections 1225 and 1226 of Title 8—establish the above-described framework for detentions, bond hearings, and removal proceedings. Those two sections are expounded below.

## A.

Section 1225 requires immigration officers to inspect "[a]ll aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States." 8 U.S.C. § 1225(a)(3). The INA defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). And in a subsection entitled "Aliens treated as applicants for admission," section 1225 provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." *Id.* § 1225(a)(1).

In a subsection entitled "Inspection of applicants for admission," section 1225 goes on to "divide[ ] applicants for admission into three categories, with differing detention and removal consequences attaching to each." *Chen*, 2026 WL 100761, at *2. These categories and consequences are as follows:

- *First*, "alien[s] . . . who [are] arriving in the United States" whom "an immigration officer determines . . . inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title" (*i.e.*, because the aliens either sought to procure admission "by fraud or willfully misrepresenting a material fact" or lacked a "valid entry document" at "the time of application for admission"), generally are subject to expedited removal proceedings "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). An exception is made for those who indicate to the inspecting immigration officer "an intention to apply for asylum under section 1158 of this title or a fear of persecution." *Id.* These asylum-seekers are referred "for an interview by an asylum officer," but they nonetheless "*shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* § 1225(b)(1)(B)(iii)(IV) (emphasis added). "In short,

- 3 -

applicants for admission under Section 1225(b)(1)(A)(i) are subject to expedited removal proceedings and mandatory detention pending removal or final determination of their asylum application." *Chen*, 2026 WL 100761, at *2.

- *Second*, aliens "who [have] not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility," 8 U.S.C. § 1225(b)(1)(A)(iii)(II), "are treated in the same way" as the first category of applicants for admission, "namely being subject to expedited removal proceedings and mandatory detention should an immigration officer also determine that they are inadmissible for misrepresentation or insufficient documentation," *Chen*, 2026 WL 100761, at *2. However, this subjection to expedited removal proceedings and mandatory detention applies only where the Attorney General chooses; her "designation shall be in [her] sole and unreviewable discretion" and "may be modified at any time." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). "On January 24, 2025, the then-Acting Secretary of the Department of Homeland Security ('DHS'), exercising authority delegated by the Attorney General, extended that designation 'to the fullest extent authorized by statute.'" *Chen*, 2026 WL 100761, at *2 (quoting *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139, 8139 (Jan. 24, 2025)). "Now, expedited removal and mandatory detention apply to [aliens] encountered anywhere within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation." *Id.* (simplified).

- *Third*, section 1225 defines a class of applicants for admission who, unlike the first two classes, receive full removal proceedings. Entitled "Inspection of other aliens," section 1225(b)(2)(A) provides that "in the case

of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [full] removal proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Crewmen, stowaways, and aliens falling within section 1225(b)(1) are expressly excluded from this third class. *Id.* § 1225(b)(2)(B). In addition, when an alien falling within this third class "is arriving on land . . . from a foreign territory contiguous to the United States, the Attorney General may return the alien to that territory pending a" section 1229a full removal proceeding. *Id.* § 1225(b)(2)(C). "[U]nlike their counterparts covered by Section 1225(b)(1), [aliens] within Section 1225(b)(2)'s ambit are entitled to full removal proceedings; but as with Section 1225(b)(1), those [aliens] are subject to mandatory detention pending removal." *Chen*, 2026 WL 100761, at \*2.

As set forth above, while they are subject to different kinds of removal proceedings, all three classes of applicants for admission are subject to mandatory detention under section 1225(b). This means they will not receive a bond hearing. "[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Instead, the INA contains "a specific provision authorizing" a different kind of "release from § 1225(b) detention." *Id.* at 300. In particular, the INA authorizes the Department of Homeland Security ("DHS") Secretary to grant a discretionary and temporary "parole into the United States" to any "alien applying for admission to the United States" on "a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A).

A parole is not a release on bond. This limited kind of release "shall not be regarded as an admission of the alien" and must end "when the purposes of such parole . . . have been served," at which time the paroled alien "shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Critically, "[t]hat express exception to detention" by temporary parole "implies that there are no *other* circumstances under

which aliens detained under § 1225(b) may be released." *Jennings*, 583
U.S. at 300 (emphasis in original).

## B.

Section 1226 erects a different framework for the aliens to whom it
applies. Unlike applicants for admission subject to section 1225(b), aliens
subject to section 1226(a) may receive bond hearings, and their detention
is discretionary. Section 1226(a) provides that "[o]n a warrant issued by
the Attorney General, an alien may be arrested and detained pending a
decision on whether the alien is to be removed from the United States."
8 U.S.C. § 1226(a). "[P]ending such decision, the Attorney General (1)
may continue to detain the arrested alien; and (2) may release the alien
on (A) bond of at least $1,500 with security approved by, and containing
conditions prescribed by, the Attorney General; or (B) conditional
parole." *Id.* "Unlike Section 1225(b), then, [aliens] covered by Section
1226(a) may—but not must—be detained pending removal proceedings,
and may also be released from detention on bond or conditional parole."
*Chen*, 2026 WL 100761, at *3.

This allowance for discretionary detention and the availability of
bond hearings, however, is subject to an exception "as provided in
subsection (c)." 8 U.S.C. § 1226(a). Under that subsection, "[t]he Attorney
General shall take into custody any alien" who "is inadmissible" or who
"is deportable" because of his commission of a list of specified crimes,
offenses, or terrorist activities. *Id.* § 1226(c); *see Chen*, 2026 WL 100761,
at *3 (detailing the categories). And that list recently grew. In 2025,
Congress enacted the Laken Riley Act, which added another
"enumerated reason for mandatory detention" to section 1226(c). *Chen*,
2026 WL 100761, at *4.

Under the Laken Riley Act, section 1226(c) mandatory detention has
been extended to any alien "inadmissible under paragraph (6)(A),[1] (6)(C),
or (7) of section 1182(a) of this title" who:

---

[1] Aliens inadmissible under paragraph (6)(A) are those "present in the United
States without being admitted or paroled, or who arrive[ ] in the United States at any
time or place other than as designated by the Attorney General." 8 U.S.C.
§ 1182(a)(6)(A)(i).

is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(E); *see* Pub. L. No. 119-1, 139 Stat. 3 (2025). In short, an alien "must be detained if he or she was arrested for, convicted of, or admitted to committing any of the crimes listed in the Laken Riley Act and is released in connection with those crimes." *Chen*, 2026 WL 100761, at *4. And such an alien cannot receive a bond hearing. *See id.* Instead, he or she may be released "only if the Attorney General decides . . . that release is necessary" for witness protection "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4).

## C.

Altogether, sections 1225 and 1226 define "at least five categories of [aliens] who are treated differently pending removal proceedings." *Chen*, 2026 WL 100761, at *4. Those categories are reflected in the following useful chart that Judge Cronan compiled:

| Statutory Provision | Covered Noncitizen | Removal Proceedings | Detention |
|---|---|---|---|
| 8 U.S.C. § 1225(b)(1)(A)(i) | "[A]n alien" who "is arriving in the United States" and that an immigration officer determines is inadmissible for misrepresentation or lack of documentation | Expedited | Mandatory; no bond but potential parole |

| | | | |
|---|---|---|---|
| 8 U.S.C. § 1225(b)(1)(A)(iii) | "An alien" who "has not been admitted or paroled into the United States," who has not shown continuous physical presence for two years, who has been designated by the Attorney General, and whom an immigration officer determines is inadmissible for misrepresentation or lack of documentation | Expedited | Mandatory; no bond but potential parole |
| 8 U.S.C. § 1225(b)(2)(A) | "[A]n alien"—other than crewmen, stowaways, and those covered by Section 1225(b)(1)— "who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" | Full | Mandatory; no bond but potential parole |
| 8 U.S.C. § 1226(a) | "[A]n alien" arrested "[o]n a warrant issued by the Attorney General" | Full | Discretionary, with potential bond |
| 8 U.S.C. § 1226(c) | "[A]ny alien" with a disqualifying criminal history | Full | Mandatory; no bond but potential witness-protection release |

*Chen*, 2026 WL 100761, at *5.

## II.

With the statutory framework sketched, this Court now turns to the petition. Petitioner Andres Diaz Lopez is a Mexican citizen who entered the United States without inspection or authorization and has been living in Orlando unlawfully since an unspecified date in 2021 or 2022.[2] (Doc. 1, ¶ 43; Doc. 7 at 3). ICE detained Petitioner on September 30, 2025, and is now holding him at the Baker Correctional Institution, which is located within this Court's territorial jurisdiction. (Doc. 1, ¶ 43).

Petitioner received a notice to appear for full removal proceedings under section 1229a. His notice charged him with being "an alien present in the United States who has not been admitted or paroled." (Doc. 7 at 22, Ex. A). Specifically, the notice alleged that Petitioner is a native and citizen of Mexico, and that he entered the United States without possessing "a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA]." (*Id.*). At a hearing, ICE clarified that it has charged Petitioner with being subject to removal as an alien who is inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i). (Doc. 1 ¶ 44).

As alleged in his petition, Petitioner was not provided an opportunity to post bond or be released on other conditions. (*Id.* ¶¶ 46–47). Petitioner subsequently requested a bond redetermination, which the immigration judge denied based on a finding that Petitioner was subject to mandatory detention under section 1225(b)(2)(A). (Doc. 7 at 26, Ex. B). He now seeks a writ of habeas corpus to challenge the legality of that detention. (*See generally* Doc. 1). The thrust of his claims is that section 1226(a)—rather than section 1225(b)(2)—governs his detention, and that he is therefore entitled to a bond hearing. The Government responds that Petitioner is mistaken, and that he is subject to mandatory detention under section 1225(b)(2)(A).

Petitioner's case is one of many. On July 8, 2025, DHS issued a notice that any alien in the United States "who has not been admitted . . . whether or not at a designated port of arrival" should be detained under section 1225(b)(2) rather than section 1226. *See ICE*

---

[2] Petitioner alleges that he initially entered the United States in April 2017 with H2A (temporary agriculture worker) status but later departed and then re-entered without permission sometime in 2021 or 2022. (Doc. 1, ¶ 43).

*Memo: Interim Guidance Regarding Detention Authority for Applicants for Admission*, AILA Doc. No. 25071607 (July 8, 2025). Approximately two months later, the Board of Immigration Appeals followed suit, holding that, "under a plain language reading of" section 1225(b)(2)(A), "Immigration Judges lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission." *Yajure Hurtado*, 29 I. & N. Dec. 216, 225 (BIA 2025).

The Board of Immigration Appeals' precedential decision binds all immigration judges. As a result, petitions like the instant one have flooded federal courts across the country. And with no binding authority directly addressing the matter, those courts have split. *Compare, e.g.*, *Cetino v. Hardin*, No. 2:25-cv-1037-JES-DNF, 2025 WL 3558138, at *2– 4 (M.D. Fla. Dec. 12, 2025) (concluding that the court had jurisdiction to consider the petition, that the petitioner's detention was governed by section 1226(a), and that the petitioner must be afforded a bond hearing), *with Mejia Olalde v. Noem*, No. 1:25-cv-168-JMD, 2025 WL 3131942, at *2 (E.D. Mo. Nov. 10, 2025) (concluding that the petitioner was properly detained without a bond hearing under section 1225(b)(2)).

## III.

Before addressing the merits, this Court examines its jurisdiction. 28 U.S.C. § 2241 extends the writ of habeas corpus to those who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Government argues, however, that two provisions of the INA strip this Court of the jurisdiction to entertain the petition that it otherwise would have under section 2241. The Government is wrong.

The Government first points to 8 U.S.C. § 1252(g). Section 1252(g), in relevant part, provides that:

> no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

What appears, at first glance, to be a sweeping jurisdictional bar in fact "is much narrower." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (quoting section 1252(g)). "§ 1252(g) bars only those claims that directly relate to [those] three specific actions." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021). Thus, the jurisdictional analysis centers on "the action being challenged." *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020).

The Supreme Court and Eleventh Circuit acknowledge that "although 'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by section 1252(g). *Camarena*, 988 F.3d at 1272 (quoting *American-Arab Anti-Discrimination Comm.*, 525 U.S. at 487). But no binding authority directly addresses an alien's challenge to his classification as a detainee under section 1225(b)(2) rather than section 1226(a). The Government nonetheless contends that *Gupta v. McGahey*, 709 F.3d 1062 (11th Cir. 2013) (per curiam), controls. There, the Eleventh Circuit held that an alien's *Bivens*[3] claims that the arresting ICE agents "illegally procured an arrest warrant, . . . illegally arrested him, and . . . illegally detained him" were barred under section 1252(g) because "each arise from an action taken to commence removal proceedings." *Id.* at 1065. The *Gupta* Court explained that the actions "were taken in an effort to secure [the plaintiff] and prevent potential danger . . . while he awaited a determination of his removal." *Id.*

The Government appears to argue that *Gupta* controls here because, like in *Gupta*, Petitioner challenges decisions and actions arising from the commencement of his removal proceedings. (Doc. 7 at 6). This Court disagrees. Contrary to the Government's contention that "this case is only about whether ICE could detain Petitioner pending removal proceedings," (*id.* at 7), Petitioner contests only his classification under the statute, *see Ortiz v. Noem*, No. 3:25-cv-1386-MMH-MCR, 2025 WL

---

[3] *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

3653217, at *3 (M.D. Fla. Dec. 17, 2025). In contrast, Gupta challenged his detention itself. *Gupta*, 709 F.3d at 1065; *see also Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016).

Petitioner's challenge may impact whether he remains detained pending removal, but that is not the question that his petition presents. The tangential relationship between this Court's ruling and whether Petitioner remains detained is evidenced by the fact that even if this Court grants the petition by ordering a bond hearing, the immigration judge still will have discretion whether to release Petitioner on bond. *See* 8 U.S.C. § 1226(a)(1)–(2) ("[P]ending [a decision of removal], the Attorney General—(1) may continue to detain the arrested alien; and (2) may release the alien on—bond[.]"); *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) (providing that prior to a final removal order, "the immigration judge is authorized to . . . detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released").

"While [section 1252(g)] bars courts from reviewing certain exercises of discretion by the attorney general, it does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions." *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006). Accordingly, consistent with the narrow understanding of section 1252(g) that the Supreme Court and Eleventh Circuit have articulated, this Court concludes that it does not bar jurisdiction over this petition. *See American-Arab Anti-Discrimination Comm.*, 525 U.S. at 482.

The Government next points to 8 U.S.C. § 1252(b)(9), also known as the "Zipper Clause." It provides, in pertinent part, that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

This provision bars a court from reviewing only "'an order of removal,' 'the decision . . . to seek removal,' or 'the process by

which . . . removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)). In other words, "the zipper clause only affects cases that 'involve[ ] review of an order of removal." *Canal A Media Holding, LLC*, 964 F.3d at 1257 (quoting *Madu*, 470 F.3d at 1367). Section 1252(b)(9) does not prohibit this Court from considering Petitioner's challenge because there is no final removal order for this Court to review, and in any event, Petitioner does not contest his potential removal. *See Lopez v. Hardin*, No. 2:25-cv-830-KCD-NPM, 2025 WL 3022245, at *3 (M.D. Fla. Oct. 29, 2025) (concluding that section 1252(b)(9) did not bar consideration of the petition to be classified under section 1226(a) rather than section 1225(b)(2) because the petitioner did not challenge a removal order).

## IV.

Now on to the merits of Petitioner's statutory claim in Count I, which presents a question that's simply framed but less simply answered: whether section 1226(a) or section 1225(b)(2)(A) governs his detention. "As in all statutory-interpretation cases," the court's "duty is to discern [the statutes'] ordinary meaning." *United States v. Hernandez*, 107 F.4th 965, 968 (11th Cir. 2024). This duty calls on the court "to interpret statutory language according to its plain meaning as understood within its statutory context." *Turner v. U.S. Att'y Gen.*, 130 F.4th 1254, 1258 (11th Cir. 2025). A close examination of the statutory text and context confirms that Petitioner's detention is governed by section 1225(b)(2)(A).

### *Text*

As an initial matter, Petitioner argues in his reply that the Government's own exhibits—the notice to appear, an immigration judge's order denying his bond redetermination request, and a notice of hearing—show that he is in section 1226(a) detention rather than section 1225(b)(2)(A) detention. He observes that those documents reflect his placement in full removal proceedings under section 1229a, and the Government never commenced expedited removal proceedings against him. (Doc. 8 at 3). Petitioner's argument, however, hinges on a faulty premise: that section 1225(b)(2)(A) detainees receive expedited removal proceedings. As explained earlier, that premise is incorrect; they receive *full* removal proceedings. *See* 8 U.S.C. § 1225(b)(2)(A) (noting that the aliens to whom it applies "shall be detained for a proceeding under

section 1229a of this title"); *see also id.* § 1229a (establishing the procedures for full removal proceedings). That the Government has placed Petitioner in full removal proceedings is entirely consistent with—even necessary to—its position that Petitioner is a section 1225(b)(2)(A) detainee.

Just as patent as Petitioner's placement in full removal proceedings is his status as an "applicant for admission." Section 1225 provides that "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." *Id.* § 1225(a)(1). Petitioner is an alien, he's present in the United States, and he has not been admitted— *i.e.*, he has not gained "lawful entry . . . into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Therefore, he is an "applicant for admission."

The real rub is whether section 1225(b)(2)(A) applies to all applicants for admission, or instead to only a subset that excludes Petitioner. With exceptions not applicable here,[4] the statute requires that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [full] removal proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A). Petitioner does not contend that he is entitled to be admitted. Nor does he appear to dispute that an examining immigration officer determined his clear lack of entitlement to admission; indeed, the documents before this Court suggest that such a determination was made. (*See* Doc. 1-4; Doc. 7 at 22) (denial of custody redetermination and notice to appear). Instead, Petitioner seizes on the "seeking admission" language to argue that the statute embraces only a subset of applicants for admission. Under his telling, only "recent arrivals"—whom Petitioner defines as those aliens "arriving at U.S. ports of entry or who recently entered the United States"—can qualify as those "seeking admission." (Doc. 1, ¶¶ 24, 40).

---

[4] Crewmen, stowaways, and arriving aliens subject to expedited removal under section 1225(b)(1) are not governed by section 1225(b)(2)(A). *See* 8 U.S.C. § 1225(b)(2)(B). Petitioner does not contend that he is a crewman, stowaway, or arriving alien subject to expedited removal.

To be sure, many other district courts have agreed with Petitioner and have held that aliens seeking admission are a distinct and narrower class than applicants for admission. *See, e.g.*, *Gomez–Pena v. Sec'y, Dep't of Homeland Sec.*, No. 3:25-cv-1287-MMH-MCR, 2026 WL 83980, at *4 (compiling cases). Even so, for three reasons, this Court cannot go along.

*First*, "[s]ection 1225 itself expressly treats applicants for admission as among those seeking admission—indeed, it does so twice." *Chen*, 2026 WL 100761, at *9. Section 1225(a)(3) states that "[a]ll aliens . . . who are applicants for admission *or otherwise seeking admission* . . . to . . . the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). And section 1225(a)(5) states that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission* to the United States . . . ." *Id.* § 1225(a)(5) (emphasis added). Both of these provisions reflect that applicants for admission are seeking admission. And by employing the phrase "or otherwise seeking admission," section 1225(a)(3) "reinforces the reading that all 'applicants for admission' are 'seeking admission' because it recognizes that there are 'other[ ]' ways to seek admission besides being an 'applicant[ ] for admission.'" *Mejia Olalde*, 2025 WL 3131942, at *3; *accord Chen*, 2026 WL 100761, at *9 (noting that according to Black's Law dictionary, "'otherwise,' after all, means to do something '[i]n a different way' or 'in another manner'"). Aliens "seeking admission may be a broader category than applicants for admission, but not a narrower one . . . ." *Chen*, 2026 WL 100761, at *9; *see id.* (giving an example of an alien who "may be seeking admission to the United States while . . . abroad" as one who would not qualify as an applicant for admission under section 1225(a)(1)).

*Second*, "[t]o 'seek' is a synonym of to 'apply' for." *Mejia Olalde*, 2025 WL 3131942, at *3 (citing Merriam-Webster Thesaurus). Thus, the statute's unambiguous treatment of applicants for admission as a subset of those seeking admission coheres with the plain meanings of both words. Treating them as entirely distinct categories, on the other hand, would ignore their synonymous relationship (not to mention the statute's repeated express treatment of applicants for admission as aliens seeking admission).

*Third*, courts taking a different view of the phrase "seeking admission" have found themselves drawing lines that appear nowhere in

the statutory text. *See Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872, at *7 (C.D. Cal. Dec. 19, 2025) (noting several "improper line drawing exercises"). These courts have guardedly asserted that "the active construction of 'the phrase seeking admission,' though undefined in § 1225(b)(2)(A), 'necessarily implies *some sort* of present-tense action.'" *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 488 (S.D.N.Y. 2025) (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass. 2025)) (emphasis added). And they posit that those who have "already 'entered' the country" and who are "already present" within the United States cannot be said to still be "seeking admission" to the country. *Id.* at 488–89. This latter premise appears nowhere in—and does not follow from—the statutory text. And it "introduce[s] more questions to the statute than answers." *Chen*, 2026 WL 100761, at *9.

"For example, if § 1225(a) is interpreted as applying only to aliens at the border (despite no support in the text for that limitation), then where does the statute's application end? One mile from the border? Twenty-five miles? And how quickly must the alien be apprehended before the statute no longer applies?" *Altamirano Ramos*, 2025 WL 3199872, at *7. Stated differently, "at what point does an alien who enters unlawfully no longer actively desire admission? Indeed, when is someone already here? The courts taking this position decline to say." *Chen*, 2026 WL 100761, at *9. Perhaps that's because "[t]he statute does not address those difficult questions"; to the contrary, the statute "is not temporally or geographically limited and instead applies to *any* alien who is 'present in the United States who has not been admitted.'" *Altamirano Ramos*, 2025 WL 3199872, at *7 (quoting 8 U.S.C. § 1225(a)(1)).

That "Congress could have 'included [aliens] who are seeking admission within the definition' of applicants for admission in Section 1225(a)(1) or refrained from 'includ[ing] the phrase seeking admission' in Section 1225(b)(2)(A)" is of no moment. *Chen*, 2026 WL 100761, at *10 (first quoting *Castañon–Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025); then quoting *Lopez Benitez*, 795 F. Supp. 3d at 488). "Rather than expecting (let alone demanding) perfection in drafting," the Supreme Court has "routinely construed statutes to have a particular meaning even as [it] acknowledged that Congress could have expressed itself more clearly." *Torres v. Lynch*, 578 U.S. 452, 472 (2016) (citing examples). Courts must discern "the right and fair reading of the statute before [them]" rather than ask how Congress might have drafted it "in more crystalline fashion." *Id.* at 473.

### *Context*

The "statutory context" reinforces section 1225(b)(2)(A)'s "plain meaning." *Turner*, 130 F.4th at 1258. For one thing, "the rest of § 1225 establishes that Congress knows how to limit the scope of the text geographically and temporally when it wants to." *Mejia Olalde*, 2025 WL 3131942, at *4. Take sections 1225(b)(1)(A)(i) and 1225(b)(1)(A)(ii). Those provisions govern an alien "who is arriving in the United States" whom an immigration officer determines inadmissible for certain enumerated reasons. 8 U.S.C. § 1225(b)(1)(A)(i), (ii). Consider also section 1225(b)(1)(A)(iii)(II). That provision governs an alien who cannot demonstrate that he "has been physically present in the United States continuously for the 2-year period immediately prior to" the date of his inadmissibility determination. *Id.* § 1225(b)(1)(A)(iii)(II). Section 1225(b)(2)(A), by contrast, contains no similar limitation to "arriving" aliens or those "physically present in the United States" for a given period. This Court cannot "insert" a temporal or geographical limitation "that is not in the text of" section 1225(b)(2)(A)—particularly when Congress itself inserted such limitations in surrounding provisions. *Mejia Olalde*, 2025 WL 3131942, at *4.

Similarly, section 1225(b)(2)(C) governs an alien "who is arriving on land . . . from a foreign territory contiguous to the United States." 8 U.S.C. § 1225(b)(2)(C). This provision "reflects that applicants for admission include both those who are arriving and those who are already here." *Chen*, 2026 WL 100761, at *10. Yet again, "Congress could have chosen to use 'arriving alien' or 'an alien who is arriving' rather than 'applicant for admission' in Section 1225(b)(2)(A), too, but it did not." *Id.*

Still, some courts have attempted to graft an "arriving alien" limitation onto section 1225(b)(2)(A) by observing that part of section 1225's general title refers to "expedited removal of inadmissible arriving aliens." *See, e.g.*, *Barco Mercado v. Francis*, No. 25-cv-6582 (LAK), 2025 WL 3295903, at *6 (S.D.N.Y. Nov. 26, 2025). There are multiple problems with this approach. First, it ignores that the title embraces three distinct subjects, of which expedited removal of certain arriving aliens is only one. Second, this portion of the title plainly and on its face does not apply to section 1225(b)(2)(A), which governs a class of aliens subject to full—not expedited—removal proceedings. *See* 8 U.S.C. § 1225(b)(2)(A) (providing that the aliens whom it governs "shall be detained for a [full

removal] proceeding under section 1229a"). And third, a title cannot "supplant the actual text of the provision." *Dubin v. United States*, 599 U.S. 110, 124 (2023).

Another important part of the statutory context, of course, is section 1226. Some courts have suggested that the Government's interpretation of section 1225(b)(2)(A) would render its provisions superfluous. *See, e.g.*, *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *4 (S.D.N.Y. Nov. 4, 2025) (opining that the Government's "reading of Section 1225 would also all but read Section 1226 off the books"). This Court respectfully disagrees. "First, to trigger mandatory detention under Section 1225(b)(2)(A), 'the examining immigration officer [must] determine[ ] that [the] alien seeking admission is not clearly and beyond a doubt entitled to be admitted,' 8 U.S.C. § 1225(b)(2)(A); if that determination is not made, then Section 1225(b)(2)(A)—along with its mandatory detention—does not apply." *Chen*, 2026 WL 100761, at *11. This leaves room for section 1226(a) to operate where no such determination is made.

In addition, "'there are many other categories of aliens to whom § 1226(a) is applicable, but not § 1225(b)(2).'" *Id.* (quoting *Sandoval v. Acuna*, No. 6:25-cv-1467, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025). For example, section 1226 applies simply to "an alien," 8 U.S.C. § 1226(a), as distinct from "[a]n alien present in the United States who has not been admitted or who arrives in the United States," *id.* § 1225(a)(1) (defining "applicant for admission"). Unlike section 1225(b)(2)(A), therefore, section 1226 governs aliens "who are lawfully admitted . . . and who then remain present unlawfully." *Chen*, 2026 WL 100761, at *11. "It would also apply to [aliens] who are lawfully admitted and later become inadmissible or deportable for having committed offenses *other* than those specified in Section 1226(c)." *Id.* "So Section 1226(a) 'operates as a catchall provision *for all aliens*, including those who enter lawfully but later become inadmissible' or deportable." *Id.* (quoting *Sandoval*, 2025 WL 3048926, at *4).

Nor does the Government's reading conflict with the Laken Riley Act. As other courts have explained, section 1225(b)(2)(A) and the Laken Riley Act's recent amendments to section 1226(c) overlap only in part. As amended, section 1226(c) subjects to mandatory detention "any alien who . . . is inadmissible under" section 1182(a)(6)(A)—*i.e.*, "[a]n alien present in the United States without being admitted or paroled, or who

arrives in the United States at any time or place other than as designated by the Attorney General," 8 U.S.C. § 1182(a)(6)(A)—and who is released after being charged with, arrested for, convicted of, or having admitted to the commission of certain crimes, *id.* § 1226(c)(1)(E). Similarly, section 1225(b)(2)(A) imposes mandatory detention on "[a]n alien present in the United States who has not been admitted." *Id.* § 1225(a)(1) (defining "applicant for admission").

While at first blush the overlap between section 1225(b)(2)(A) and section 1226(c)(1)(E) seems extensive, the provisions have different reaches in several notable respects. For one thing, "mandatory detention under Section 1225(b)(2)(A) is triggered only 'if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted,' *id.* § 1225(b)(2)(A); that same requirement does not exist for mandatory detention under Section 1226(c)." *Chen*, 2026 WL 100761, at *12. "Moreover, Section 1182(a)(6)(A) is not the only subparagraph of Section 1182(a) the Laken Riley Act references: it also covers [aliens] inadmissible under subparagraphs (6)(C) and (7) who are connected to certain crimes." *Id.* "And 'an individual who has been admitted through fraud' under subparagraph (6)(C), say, 'might not be an applicant for admission under § 1225,' as [an alien] can have 'procured' by fraud or willful misrepresentation 'admission into the United States.'" *Id.* (first quoting *Mejia Olalde*, 2025 WL 3131942, at *4; then quoting 8 U.S.C. § 1182(a)(6)(C)(i)). "So the Laken Riley Act 'may require that person to be detained even if § 1225 would not apply.'" *Id.* (quoting *Mejia Olalde*, 2025 WL 3131942, at *4).

"Because Section 1225(b)(2)(A) and the Laken Riley Act 'overlap in part' but 'are by no means congruent,' there is 'no reason to depart from the plain meaning of' Section 1225(b)(2)(A) 'in order to avoid making' the Laken Riley Act 'superfluous.'" *Id.* (quoting *Jennings*, 583 U.S. at 305). "Congress, after all, is entitled to 'take[ ] a belt and suspenders approach to legislation,' especially where—as here—reasonable minds can differ (and in fact have differed) on the scope of Section 1225(b)(2)(A)'s mandatory detention." *Id.* (quoting *Mejia Olalde*, 2025 WL 3131942, at *4). And "even assuming there were surplusage, that cannot trump the plain meaning of § 1225(b)(2)." *Mejia Olalde*, 2025 WL 3131942, at *4. Indeed, "while the canon against superfluity 'applies to interpreting any two provisions in the U.S. Code, even when Congress enacted the provisions at different times,' it is 'pretty weak when applied to acts of

Congress enacted at widely separated times.'" *Id.* at *5 (first quoting *Bilski v. Kappos*, 561 U.S. 593, 608 (2010); then quoting *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir. 1999)). "The Laken Riley Act was passed this year—decades after the other relevant provisions—so the canon against superfluity does not apply strongly here." *Id.*

### *Rejection of Other Considerations*

At various points, the parties ask this Court to look beyond the statutory text and context and to rely on extraneous considerations. This Court declines to do so.

First, Petitioner and the Government both invite this Court to consider various legislative history materials that they think explain why their competing interpretations comport with Congress's purposes in enacting the INA. "[B]ut purposes, obvious or otherwise, provide no basis for skirting a statute's plain language." *United States v. Pate*, 84 F.4th 1196, 1206 (11th Cir. 2023). "And as the Supreme Court has reminded us, to the extent a statute's purpose is relevant, '[t]he best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President.'" *Id.* (quoting *West Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991)). Therefore, this Court has not considered the parties' proffers of legislative history.

Next, Petitioner urges this Court to lift dicta from *Jennings* out of context and treat it as speaking to the question that his petition presents. In particular, Petitioner points to the Supreme Court's general overview of sections 1225 and 1226, including a passage suggesting that section 1225(b)'s mandatory-detention scheme applies "at the Nation's borders and points of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. "That language is best read to reflect the catchall nature of Section 1226(a)" as distinct from the more focused rule of section 1225(b). *Chen*, 2026 WL 100761, at *12. But more fundamentally, "Supreme Court opinions should not be read to decide issues not squarely presented or even raised to the Court, as is the case here." *Id.* The Supreme Court itself has cautioned that its passing "remark" in dicta that characterizes a statute "is obviously not controlling, coming as it did in an opinion that did not present the question" that a later case presents. *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 463 n.11 (1993); *see id.* (issuing a "valuable reminder about the

need to distinguish an opinion's holding from its dicta"). If "it would be a mistake to read judicial opinions like statutes," *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 426 (2024) (Gorsuch, J., concurring), it would be an even greater error to substitute out-of-context dicta for the statutory text. That's a mistake this Court won't make.

Finally, a central theme of the petition is the novelty of the Government's current position. For example, Petitioner notes that his detention without a bond hearing stems from "a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice." (Doc. 1, ¶ 30). It does appear that the Government's current understanding of sections 1225(b)(2)(A) and 1226(a) breaks from longstanding executive-branch practice. *See Hurtado*, 29 I. & N. at 225 n.6. But government practice—whether longstanding or novel—does not constitute, and cannot "supersede," the law. *Loper Bright Enters.*, 603 U.S. at 386 (majority opinion); *see* U.S. Const. art. I, § 7 (providing that "a Law" consists only of a "Bill" that has successfully undergone bicameralism and presentment procedures). Rather, courts must "independently interpret the statute and effectuate the will of Congress," *Loper Bright Enters.*, 603 U.S. at 395, thereby "uphold[ing] the traditional conception of the judicial function," *id.* at 395–96.

Of course, "like any other interpretive aid," longstanding executive-branch practice "can inform a court's determination of what the law is." *Id.* at 386 (simplified). But this "[r]espect" for a co-equal branch of government must not devolve into abdication of a court's duty to faithfully and "independent[ly]" interpret the enactments of yet another co-equal branch. *Id.* "[A] long-established practice does not justify a rule that denies statutory text its fairest reading." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 329 (2015) (simplified). Here, the fairest reading of the INA supports the Government's current practice rather than its prior one.

## V.

Rounding out its review of the petition, this Court considers Petitioner's second and third claims. They fare no better than his statutory claim.

In Count II, Petitioner claims that his detention violates the bond regulations set forth in 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. However,

this claim collapses into his statutory claim, as it turns entirely on his assertion that "individuals who [have] entered [the country] without inspection [are] eligible for consideration for bond and bond hearings before [immigration judges] under 8 U.S.C. § 1226 and its implementing regulations." (Doc. 1, ¶ 54). For the reasons explained above, that assertion is mistaken. Moreover, Petitioner makes no showing that his detention would violate the bond regulations if section 1225(b)(2) governs his detention—and it does. Therefore, his second claim fails.

In Count III, Petitioner claims that his detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution. To the extent that this claim is independent of his statutory claim in Count I, it fails to show entitlement to relief. "Detention during removal proceedings is a constitutionally permissible part of" the deportation process. *Demore v. Kim*, 538 U.S. 510, 531 (2003). Accordingly, the Supreme Court has held that due process does not require a bond determination for a section 1226(c) detention during the entirety of removal proceedings. *See id.*; *see also Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1210–12 (11th Cir. 2016) (discussing *Demore*), *decision vacated and appeal dismissed as moot*, 890 F.3d 952 (11th Cir. 2018).

If a bond hearing is not required for section 1226 detainees during their mandatory detention, "then the same is true" for section 1225 detainees during theirs. *Chen*, 2026 WL 100761, at *14. Regardless, "given the relatively short duration of Petitioner's detention—approximately [four] months—any constitutional argument for habeas relief . . ., *if possible*, would be premature." *Candido v. Bondi*, 2025 WL 34832, at *5 (W.D.N.Y. Dec. 4, 2025) (citing cases, including *Demore*); *cf. Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (recognizing, "for the sake of uniform administration in the federal courts," a presumption favoring "the constitutionality of detention for" six months after a final order of removal, and contemplating longer post-final order detention where the Government shows a "significant likelihood of removal in the reasonably foreseeable future").

**\* \* \***

For the foregoing reasons, Petitioner's detention is governed by 8 U.S.C. § 1225(b)(2)(A), and his claims fail.

Therefore, it is **ORDERED** and **ADJUDGED**:

1.  The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**;

2.  The Clerk is **DIRECTED** to enter judgment, terminate any

    pending motions as moot, and close this case.

**DONE** and **ORDERED** in Jacksonville, Florida, on January 26, 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-6

c:

Counsel of Record